## CROW et al. v. CONTINENTAL OIL CO.
### No. 9424.

Circuit Court of Appeals, Fifth Circuit.
Dec. 2, 1940.
Rehearing Denied Jan. 14, 1941.

---

[8] Cf. Oregon-Washington Railroad Nav. Co. v. McGinn, 258 U.S. 409, 42 S.Ct. 332, 66 L.Ed. 689.

Ralph Gillen, of Dallas, Tex., and W. H. Caldwell, of Wichita Falls, Tex., for appellants.

J. A. Gooch, of Fort Worth, Tex., and John Davenport, of Wichita Falls, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is the second appeal of this case. The facts are substantially the same as on the first appeal and are fully set out in our former opinion, Crow et al. v. Continental Oil Company, 100 F.2d 292.

Ed R. Crow, an acetylene welder, was killed while doing welding work for Continental Oil Company. Ruby Crow, his widow, individually and as next friend for their minor children, with David A. Crow and his wife, parents of the deceased, sued the company for his wrongful death. On the first trial a verdict was directed for the defendant and on appeal we held that the evidence was sufficient to carry the case to the jury. On the second trial the court submitted the case to the jury, and a verdict was returned for the defendant, Continental Oil Company. The plaintiffs have appealed.

Crow was working for his company, EZL Tank Company, at Nacoma, Texas, about two miles from the place where the accident occurred. He was engaged under contract in mending, conditioning, and treating five oil tanks belonging to Continental Oil Company. For many days Continental Oil Company had been engaged in the installation of a battery of oil tanks, and many oil wells had been connected with a large "gun barrel" and a smaller "hay" tank at the place of the accident. Although the company welder had gone over the tanks just a few days before the accident, it was found upon a final test, made on the morning of the accident, when air was pumped into the tanks, that they contained small pin holes. The company welder was not available and those in authority sent for Crow to come and mend the tanks. The Continental Oil Company furnished a truck to move Crow and his equipment over to the tanks, and Crow was advised that Continental would supply him with helpers to do the work. Crow had no interest in and, so far as the record discloses, had never been to the place where the mending was to be done. When he arrived, the Continental Oil Company had employees working about and upon the two tanks. One employee was upon the "gun barrel" closing the "thief" or manhole. A Continental foreman helped Crow unload his equipment and went with him to the "hay" tank, they went on the inside of this tank and the foreman pointed out the holes to be mended. When Crow had finished mending the "hay" tank, the foreman and Deeds, the employee who brought Crow to perform the work, went with him to the "gun barrel" tank. The foreman and Deeds helped Crow take his welding apparatus to the top of the tank, and the foreman pointed out the pin hole which was to be mended. Mr. Deeds went on top of the tank and stuck his knife blade in the hole. Crow lit his torch and when he applied it to the hole an explosion occurred, the top was blown off the tank, and Crow and the two other men on the tank were hurled through the air. All three were killed.

The evidence again clearly makes a jury question. The issues are simple and, if no

confusion is permitted, can be easily understood.

■ The appellants complain of three charges which were submitted to the jury at the request of the defendant:

No. 2. "I further instruct you, gentlemen, that you are instructed that E. R. Crow, the deceased, owed to himself the duty of inspecting the tank in question prior to the beginning of the welding operation, and if you believe from a preponderance of the evidence that he did not make any inspection of the tank in question, then you will find for the defendant, Continental Oil Company."

No. 3. "You are instructed further, gentlemen, that it is immaterial as to whether or not E. R. Crow was a skilled welder. If he was in fact doing welding work, and his partner had solicited welding from the Continental Oil Company, the Continental Oil Company, had a right to assume that he was a welder of sufficient experience to do the work in question, and if through his own inexperience he failed to take the ordinary precautions exercised by welders on the work in question, and through his own unskillfulness and inexperience, the explosion occurred, then you will find for the defendant, Continental Oil Company."

No. 4. "If you believe from a preponderance of the evidence that the gun barrel tank in question was turned over to the said E. R. Crow, with no instructions, other than to weld a hole which was pointed out to him by the employees of Continental Oil Company to be welded, then you will find for the defendant, Continental Oil Company."

The burden was upon the plaintiffs to show that the defendant was guilty of negligence.

■ It was the contention of the defendant, Continental Oil Company, that Crow was guilty of contributory negligence in such sort as contributed to his injury and death. If this were true the plaintiffs could not recover. The burden of proving contributory negligence was upon the defendant, and the true test was whether a prudent person, in the same situation, and with the knowledge possessed by Crow, would have done what he did. Texas & P. R. Co. v. Best, 66 Tex. 116, 18 S.W. 224; Mallory & Co. v. Smith, 76 Tex. 262, 13 S.W. 199, 18 Am.St.Rep. 40; Jordan et al. v. City of Lubbock, Tex.Civ.App., 88 S.W. 2d 560.

■ There is evidence that Crow did not hold himself out as a welder; that his company was engaged in building and conditioning tanks; that Crow had never done public welding; and that he only did welding on his own contract work, and had been doing that for only a short time. The evidence is in dispute as to whether or not this knowledge was brought to the attention of Continental Oil Company. Therefore, the question of Crow's experience or inexperience as a welder on this type of job was for the jury to consider along with the other evidence in determining whether he was negligent.

■ Crow was requested by the defendant to come to its plant and mend the two tanks, work which needed to be done at once. We repeat that Crow was upon the premises as an invitee of Continental Oil Company. Crow did not have control of the premises. Continental Oil Company was in control and had employees working about the tank and other employees helping Crow. The Continental Oil Company employees were working under the supervision of experienced foremen. The foremen and the men working under them knew that live oil turned into the tanks would generate gas which would explode if it came in contact with fire. They also knew that the "gun barrel" and "hay" tanks were old tanks and that the pipes and fittings carrying oil to and from the tanks were of second hand material. It was open to the jury to find that while Crow made no inspection of the "gun barrel" tank, he relied upon those in authority to furnish him with a safe place in which to work. It is the law in Texas that one cannot, for his own advantage, "invite others to come on, or to remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge." Galveston-Houston Electric Ry. Co. v. Reinle, 113 Tex. 456, 258 S. W. 803, 804; Bustillos v. Southwestern Portland Cement Co., Tex.Com.App., 211 S.W. 929.

As we pointed out on the former appeal, it was the duty of Continental Oil Company to furnish Crow with a reasonably safe place to perform the work of mending the tanks. This is true whether he was an experienced or inexperienced welder, and if Continental knew he was an inexperienced welder they owed him an even

higher degree of care, "and where a dangerous condition existed as it did, of which the Company knew or should have known, it should have warned Crow, or taken precautions against such dangerous condition of its premises with reference to the oil tanks." Crow et al. v. Continental Oil Co., 5 Cir., 100 F.2d 292, 294. It'results, therefore, that the court erred in giving defendant's requested instructions numbered 2, 3, and 4, and in failing to charge that the burden of proving contributory negligence was on the defendant. That portion of the oral charge which placed a duty upon Crow to see that the base plate and top plate were open was error.

■ The witness Pickett was asked: "I will ask you to tell the jury whether or not this statement is true, that when a welder comes in on any premises of the Continental Oil Company, having been sent for, to do a job, as to whether or not the employees of the Continental Oil Company know and are given to understand that the welder is to have a free rein to do as he pleases?" His answer was: "Yes sir." He was also asked: "I believe you say Mr. Pickett—I will ask you if you had known, or even suspicioned that there was anything dangerous there that afternoon, would you have been around that tank?" His answer was: "No sir." Timely objections were made to the above questions and answers, The objections should have been sustained.

■ The witness, Jimmie Jones, was in the employ of the Continental Oil Company as its welder. He was permitted to testify:

"Q. When you do welding for the Continental Oil Company, I will ask you to tell the jury who has charge of the entire welding operations, the welder or the foreman on the job? Is it the welder? A. It always has been in my case, I have always been in charge of any work I was doing when I went out there the farm boss or no one else told me what to do.

"Q. In connection with the welding operation, who was the judge as to whether or not an object is safe to be welded, you or some other employee of the Continental Oil Company? A. I am always responsible for that, and I would not take anybody's word for it."

This line of questioning was improper. The questions called for conclusions of the witness, were in many instances leading and suggestive, and permitted answers that were not matters of expert opinion. The testimony of other witnesses who testified as expert welders discloses evidence substantially like that just adverted to but since the case is to be tried again what we have said will be a sufficient guide for another trial.

For the errors pointed out the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.