**SOUTHWESTERN GREYHOUND LINES, Inc., v. CROWN COACH CO. et al.**

No. 13983.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1949.

Arnold & Arnold, Texarkana, Ark., submitted brief on behalf of appellant.

Shaver, Stewart & Jones, Texarkana, Ark., submitted brief on behalf of appellees.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

As stated by appellant, and acquiesced in by appellees, "The sole question in this case is whether or not the appellees, Crown Coach Company and its insurance carrier, Casualty Reciprocal Exchange, are entitled to contribution under Article 2212 of Vernon's Annotated Texas Statutes against the appellant Southwestern Greyhound Lines, Inc., by virtue of the payment of the judgment taken against Crown Coach Company by Mrs. Edna Whitaker, *et vir.*, in a certain cause filed and prosecuted in the Circuit Court of Miller County, Arkansas, solely against Crown Coach Company as defendant." The parties will hereinafter be referred to as Crown Coach and Greyhound.

The trial court held that the statute governs the case, entered judgment against appellant in favor of appellees in an amount equal to one-half of the amount of the judgments of $3750 entered in the action in the Circuit Court of Arkansas, namely $1875, and Greyhound appeals.

Article 2212 of the Texas Civil Statute reads: "Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency."

In applying this statute the Supreme Court of Texas in Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774, 776, affirmed on rehearing, Tex.Civ.App., 178 S.W.2d 544, said: "* * * the dominant purpose of Article 2212 was to create the right of contribution in the class of cases therein provided for, and that it was not intended thereby to limit the right of recovery to those cases in which the wrongdoer sought to be held liable for the contribution was a party to the main suit."

The evidentiary facts involved in the controversy are not in dispute. Also, both parties concede that the issues are governed by the law of Texas where the cause of action arose. The argument is directed to whether the common law of that state or Article 2212 of the statute, supra, controls.

Crown Coach and Greyhound are both foreign corporations engaged in owning and operating lines of motor busses carrying passengers for hire. Greyhound operates and maintains a bus terminal station in Texarkana, Texas, located in the north part of the annex to Hotel McCartney. The station consists of a waiting room with ticket office and rest rooms and a shed which extends from State Line Avenue on the east to Main Street on the west. The hotel company owns the station premises; Greyhound is its tenant and Crown Coach is a subtenant of Greyhound.

Crown Coach uses the facilities of the station, for the use of which in loading and unloading passengers and as compensation for handling the sales of tickets to passengers Greyhound charges Crown Coach a 10% commission on all ticket sales. Crown Coach has nothing to do with the operation, lighting or maintenance of the station and has no employees stationed there.

The shed, or driveway, north of the ticket office, has an entrance on State Line Avenue and another on Main Street. On the south side of the driveway is a raised ramp or walkway, about 3 or 4 inches high, for use of passengers entering and leaving busses, but there is no walkway on the north side.

Greyhound allocated to Crown Coach use of the lane along the north wall of the shed; and through custom and usage Crown Coach always used the north lane, and Greyhound used the south side of the driveway along the ramp or walkway.

On February 2, 1943, Mrs. Edna Whitaker came from Fort Smith, Arkansas, to Texarkana, Texas, as a passenger on a Crown Coach bus, having purchased a ticket for transportation from Tulsa, Oklahoma, to New Iberia, Louisiana. It was necessary for her to transfer at Texarkana from the Crown Coach line to a Tri-State Bus Company bus. The Tri-State bus station was located in Texarkana, Arkansas, across State Line Avenue from the east front of the Greyhound terminal station.

The Crown Coach bus on which Mrs. Whitaker came from Fort Smith arrived at the Greyhound terminal in Texarkana about 9:30 a. m. and was parked in the north lane as was customary. A Greyhound bus was due to arrive about the same time. It used the south lane, discharging its passengers on the elevated pathway along the south wall of the shed. On her arrival Mrs. Whitaker asked the Crown Coach driver how to get to the Tri-State station, and the driver told her to "go straight through the shed across the street * * * Go straight ahead and cross the street."

Mrs. Whitaker alighted safely from the bus and the driver handed down her overnight bag. After visiting a few minutes with a traveling companion she turned to make her exit from the shed. No one was in the shed at that time except Mrs. Whitaker and her traveling companion. The day was dark and rainy, and the driveway was in semi-darkness. While following the directions of the driver she fell over an obstruction, probably a piece of luggage, and was seriously injured. She did not see the object on the floor because it was dark, although she looked to see where she was walking.

For the injury so received Mrs. Whitaker and her husband sued Crown Coach in the state court of Arkansas and on June 19, 1944, recovered judgments aggregating $3,750. The judgments were affirmed by the Supreme Court of Arkansas in Crown Coach Co. v. Whitaker, 208 Ark. 535, 186 S.W.2d 940. The case was submitted to the jury upon two theories of negligence: first, that Crown Coach was negligent in failing to maintain proper lights in the bus station; and, second, that Crown Coach was negligent in parking the bus upon which Mrs. Whitaker was riding at an unusual stopping place which was unsafe on account of improper lighting. On the first theory the jury was instructed that the fact that Crown Coach had no control over the lights in the bus station was immaterial.

Prior to the trial in the state court Crown Coach notified Greyhound of the pendency of the suit and called upon it to defend the case on the theory that Mrs. Whitaker's claim was a "station liability claim", which Greyhound was obligated to defend, and Greyhound refused to do so. Upon denial of liability by Greyhound this suit was instituted by Crown Coach and its insurance carrier, Casualty Reciprocal Exchange, as subrogee, to recover judgment for indemnity or contribution. The case was tried to the court without a jury and the judgment from which this appeal was taken was rendered in favor of Crown Coach and its insurance carrier.

In the present case Crown Coach sought to recover on two theories: first, that it was entitled to be indemnified for the amount of the judgment against it in favor of Mrs. Whitaker on the theory that it was the duty of Greyhound to maintain the station in a safe condition for the use of Crown Coach and its passengers and that this duty was breached by Greyhound's failure to maintain proper lighting in the driveway; and, second, that the parties were *in pari delicto* in that they were joint tort feasors, both having failed in a duty to Mrs. Whitaker, and that Crown Coach was accordingly entitled to contribution under Article 2212 of the Texas statute, supra.

On March 11, 1949,[1] the court filed an opinion in the case in favor of Greyhound in which it was said: "The Texas rules with respect to a landlord's liability for

---

1. Withdrawn by order of Court.

injuries occurring in leased premises because of an unsafe condition existing therein, where there has been no covenant to repair or maintain the premises in a safe condition, is set forth in Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369; and here Greyhound stood in the position of a landlord and Crown in that of a tenant. In the cited case the Supreme Court of Texas said: 'Where there is no agreement by the landlord to repair the leased premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety, and the landlord is not liable to him or to any person entering under his title or by his invitation for injury caused by reason of their unsafe condition.' (150 A.L.R. at 1371, citing 27 Tex.Jur. 354; Churchwell v. Pure Oil Pipe Line Co., Tex., (Civ. App.) 289 S.W. 196; Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239, and Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R.A. 620)."

Upon further consideration of the case the court on March 25, 1949, withdrew its opinion of March 11th, and filed a second opinion,* saying:

"With respect to contribution I have reached the conclusion that the Texas statute applies and that Crown is entitled to a fifty percent contribution from Greyhound.

"Here it was the duty of Greyhound to use due care to properly maintain the lighting in the bus station. It failed to do so, but I am convinced that Crown acquiesced in that failure. It was the duty of Crown to receive and discharge its passengers in a place that would not be an unusual one to them and one well lighted. It failed to do so, but Greyhound, to say the least, acquiesced in that failure. Both Greyhound and Crown participated in the profits of Crown's operation in Greyhound's station. Greyhound knew the purpose for which the space allotted to Crown was to be used. It also knew that there was no raised ramp or walkway at that point upon which in-

gress and egress to and from Crown's busses would be afforded its passengers. Crown likewise knew this.

"I feel that both Crown and Greyhound are in pari delicto and that in the absence of some authority to the contrary, they should share the loss sustained by reason of their breach of duty to the traveling public.

\*　\*　\*　\*　\*　\*

"Having determined that both Greyhound and Crown were guilty of negligence it becomes necessary to determine whether there is any difference in the quality of the respective negligence of the two companies. (Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1304.) I am of the opinion that there was no such difference and that the negligence of both Crown and Greyhound was passive in nature. Mrs. Whitaker's injury was actually caused by her falling over a piece of luggage which had been placed in the driveway by someone. In my opinion, the active negligence in this case was the action of that unknown person in placing the luggage at an improper place."

The appellant contends that the court's first opinion of March 11, 1949, is correct and that its later opinion of March 25, 1949, is erroneous. We think the second opinion is in accord with Texas law and must be sustained.

■ It will be observed that Article 2212 of the Texas statute, supra, does not apply "in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants \* \* \* exists under the common law". Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 451, 140 A.L.R. 1304.

■■ In cases where an innocent third party is injured as the result of the negligence of two parties the Texas Courts, in determining a right or not of contribution, recognize the existence of degrees of negligence, such as active and passive. Where the negligence of both wrongdoers is of the same degree both are liable; they are in pari delicto, and contributions will be en-

---

\* No opinion for publication.

forced under the statute. Where the negligence of one is passive, however, and the other active, the one whose negligence is active must bear the entire loss on the theory that his negligence is the proximate cause. Passive negligence exists where one person negligently brings about a condition or an occasion and active negligence exists where another party negligently acts upon that condition and perpetrates a wrong. Austin Electric Railway Company v. Faust, Tex.Civ.App., 133 S.W. 449, writ of error denied by the Supreme Court of Texas. " 'Passive negligence' is a failure to do something that should have been done". English v. Miller, Tex.Civ.App., 33 S.W.2d 477, 478.

The question to be decided here is whether the court erred in holding that both Crown Coach and Greyhound were negligent and that the negligence of each was passive in nature. It was upon this finding and conclusion that judgment for contribution was entered.

It is appellant's contention that Crown Coach was guilty of active negligence in two particulars: 1. In driving its bus into a station without proper lighting and stopping in a dark place and disembarking its passengers at a place unusual to them; and (2) the direction by its driver to Mrs Whitaker to go out the east door, which was a dangerous way, rather than directing her to go out through the waiting room. It is claimed the negligence of Greyhound in failing properly to light the terminal was passive only.

Appellant relies in the first instance upon the fact that Crown Coach is a tenant of Greyhound and that as between them there was no contract to maintain the premises in a safe condition, citing Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369. That rule is quoted above in the trial court's opinion of March 11, 1949. The substance of the contention is, of course, that Greyhound owed no duty to Mrs. Whitaker to keep the station properly lighted. But the court found upon due consideration, as stated in its opinion of March 25, 1949, that the rule set forth in the Yarbrough case is not applicable to the situation in this case. Both Crown Coach and Greyhound owed to Mrs. Whitaker a duty to keep the station properly lighted. Crown Coach, as a common carrier, owed that duty to its passengers. But Greyhound assumed the duty of maintaining and operating the station, not only for its passengers, but also for the passengers of Crown Coach and two other common carriers. All of such passengers were invitees of Greyhound, and it undertook for a consideration, that is 10% of the price of tickets, to maintain the premises in compliance with law.

■ It is not disputed that under Texas law railroad stations are required to be properly lighted. Article 6395, 6448, and 6498 of Vernon's Texas Civil Statutes. Greyhound's failure to maintain proper lights was passive negligence. Both parties owed Mrs. Whitaker the duty to provide her a lighted exitway, and they were jointly liable to her for failure to do so. In 51 C. J., Railroads, § 921, it is said: "Aside from statutory provisions, a railroad maintaining a depot must keep it adequately lighted and heated, when necessary for use of its patrons." And § 920: "If a railroad not under a duty to provide depots voluntarily erects them, thereby inviting persons having business with the road to enter and use the same, they must be maintained in a safe condition." See Texas & Pac. Ry. Co. v. Mayes, Tex.Civ.App., 15 S.W. 43; Hamilton v. Texas & P. Railway Co., 64 Tex. 251, 53 Am.Rep. 756; Texas & P. Railway Co. v. Best, 66 Tex. 116, 18 S.W. 224. See, also, 44 Am.Jur., Railroads, §§ 426, 429. And "if a railroad company expressly invites or tacitly permits persons to be upon its premises * * * the company owes to such persons the duty * * * to anticipate their presence at the time when or place where such invitation or permission would probably bring about their presence, and to take such measures as ordinary prudence would require to prevent injury to them if they are in fact present." 44 Am. Jur., supra, § 427.

Under the circumstances of this case it can definitely be said that Mrs. Whitaker was an invitee of Greyhound and that it was negligent in failing to maintain adequate lighting at the time when and place

where she left Crown Coach's bus. In regard to lighting the premises both parties were passively negligent. Both furnished the occasion for the accident.

Appellant, however, contends that Crown Coach was actively negligent in that its driver directed Mrs. Whitaker after she had alighted from its bus to leave the shed by the route she pursued. In answer to this contention the trial court said: " * * * Crown has not been convicted of negligence in that regard. Certainly such action was not negligence per se, and I do not find from the evidence in this case that it was negligent in that respect. There is nothing in evidence here to show that Crown's driver gave Mrs. Whitaker directions which an ordinarily prudent person would not have given her under the same or similar circumstances. It is not shown that there was anything unusual in instructing her to use that method of exit from the station; nor that Crown's bus driver saw or should have seen the obstruction in the way."

It will be observed further on this point that the driver did not know that the luggage was on the floor. He could not see it there. The active negligence causing the accident was committed by the unknown person who left the luggage on the floor in a dark place near where passengers must alight from incoming busses. We have read the Texas cases cited by the appellant, as did the trial court, and we find none of them inconsistent with its conclusion. No useful purpose would be served by reviewing them.

Affirmed.