**Wilford KAMARATH, Appellant,**

v.

**C. C. BENNETT, Appellee.**

No. 5692.

Court of Civil Appeals of Texas, Waco.

April 14, 1977.

Rehearing Denied May 5, 1977.

Michael M. Daniel and Virginia Paxton, Carol M. Barger, Dallas, for appellant.

James H. Martin, Dallas, for appellee.

Larry Niemann, Niemann & Niemann, Austin, amicus curiae.

OPINION

JAMES, Justice.

This is a landlord and tenant case. Plaintiff-Appellant Wilford Kamarath sued De-

fendant-Appellee C. C. Bennett for damages for breach of an alleged "implied warranty of habitability" of residential rental premises. Trial was had before the court without a jury, after which the trial court entered judgment that the tenant Kamarath take nothing, from which the tenant appeals. We affirm.

On March 1, 1975, Plaintiff Kamarath rented an apartment from Defendant Bennett. The apartment was located in a seventy-five year old two-story brick building. Kamarath inspected the premises prior to renting them. The rent agreed to was $110.00 per month with all utilities being paid for by the landlord, including water, gas, electricity, and sewer. The lease was oral and on a month-to-month basis. Kamarath was an unemployed disabled veteran who had a wife and six children, ages two to nine, living with him.

On June 24, 1975, the building inspectors of the City of Dallas inspected the premises in response to a complaint made by Kamarath. Shortly thereafter, Bennett was notified by mail that the building was in violation of the Dallas Minimum Housing Standards and that Bennett would either have to repair the premises or close them down. Said notice stated that the landlord would have to make a number of itemized repairs in order for the building to conform to the Building Code of the City of Dallas. Specifically, the building code as pleaded by Plaintiff Kamarath is alleged to be contained in the City of Dallas Urban Rehabilitation Standards Ordinance Number 12167, as set out in the Revised Code of Civil and Criminal Ordinances of the City of Dallas.

In July of 1975 Kamarath stopped paying rent, claiming he was justified in doing so because the premises were unfit for human habitation; however, he did not vacate the premises at that time.

On or about July 24, 1975, Kamarath filed this suit against Bennett the landlord, asserting that Bennett violated an implied warranty of habitability by failing to repair the premises. The suit sought actual damages of $5000.00, exemplary damages of $5000.00, treble actual damages ($15,000.00)

under the Texas Deceptive Trade Practices Act (see Section 17.50 of the Texas Business and Commerce Code), foreclosure of an asserted judgment lien against the building and against the rent Kamarath claimed he held in his possession, and for interest and attorney's fees.

Then sometime in July or early August of 1975, landlord Bennett analyzed the repairs called for by the City building inspectors and concluded they were too costly, and that the building was too old and rundown to make the repairs worthwhile. That is to say, the landlord chose to close the property down rather than to put more money into the property. He gave notice in mid-August to all tenants to vacate the premises. He (landlord Bennett) testified that all of the tenants except Kamarath complied. Thereafter, in late September 1975, because of his refusal to vacate, Kamarath was evicted by a forcible entry and detainer suit.

This case for damages was tried in July 1976 before the court without a jury, after which the trial court entered judgment that Plaintiff Kamarath take nothing. Pursuant to request by Plaintiff-Appellant, the trial court made findings of fact and conclusions of law, pertinent of which are as follows:

(1) That Plaintiff orally rented the residential premises on a month-to-month basis from the Defendant;

(2) Plaintiff inspected and accepted the premises in their then state of repair, and at said time Plaintiff made no condition on Defendant's obligation as to the then state of repair of the premises;

(3) Nor did he (Plaintiff) make any condition as to the Defendant's obligation as to the future state of repair of the premises;

(4) Defendant made no representation as to the existing state of repair of the premises at the time of renting;

(5) Defendant made no promise as to the future state of repair of the premises at the time of renting;

(6) The change, if any, in the state of repair from and after the renting was no

more than ordinary wear and tear resulting from Plaintiff's occupancy;

(7) That Plaintiff failed to pay to Defendant the monthly rent when due; nevertheless, Plaintiff continued occupancy of the premises until removed by judicial decree;

(8) Plaintiff during the occupancy of the premises suffered no injury to his person nor damage to his property arising from the state of repair of the premises;

(9) Plaintiff was not actually or constructively evicted from the premises by the state of repair of such premises;

(10) The fair cash market value of the premises at the time of the renting was $110.00 per month;

(11) And such rental value was not diminished during Plaintiff's occupancy by reason of its state of repair beyond ordinary wear and tear due to Plaintiff's occupancy.

Based upon the foregoing fact findings, the trial court concluded that the Defendant Bennett did not breach any contract with Plaintiff or violate any duty in law owed to Plaintiff concerning the state of repair of the premises in question, and held that Plaintiff take nothing.

Appellant asserts twelve points of error; however, points one through five, inclusive, deal with the central issue vital to Plaintiff's cause of action, to wit: which rule should govern this landlord-tenant relationship: *caveat emptor*, or a legally implied duty to supply fit premises? Appellant argues that the creation of a month-to-month oral lease carries with it an implied warranty of habitability, and that this warranty obligates the landlord to repair the premises in compliance with the city building code standards. Appellant further asserts that the city building code itself imposed a duty on Defendant Bennett as landlord to maintain the premises in a fit condition. We do not agree.

Let us first consider Appellant's argument that the mere creation of a month-to-month lease creates an implied warranty of habitability. Here we have an oral month-to-month lease whereby the agreed rental is $110.00 per month, and the landlord agrees to furnish the utilities. There is no express agreement on the part of the landlord to make any repairs, and there is no assertion by the tenant that the landlord is guilty of any fraud or deceit concerning the making of repairs or the failure to make them.

■ The rule is well-settled in Texas that in the absence of fraud or deceit, there is no implied covenant that the demised premises are fit for occupation, or for the particular use which the tenant intends to make of them. *Lynch v. Ortlieb* (1888) 70 Tex. 727, 8 S.W. 515, *Perez v. Raybaud* (1890) 76 Tex. 191, 13 S.W. 177; *Cameron v. Calhoun-Smith Distributing Co.* (Austin Tex.Civ.App.1969) 442 S.W.2d 815, no writ. Also see 35 Tex.Jur.2d, "Landlord and Tenant," Section 50, page 537. A landlord is not bound to repair unless there be a covenant or agreement on his part to do so. *Weinstein v. Harrison* (1886) 66 Tex. 546, 1 S.W. 626; *Yarbrough v. Booher* (1943) 141 Tex. 420, 174 S.W.2d 47, 150 ALR 1369.

■ Our Supreme Court has said: "The mere relation of landlord and tenant creates no obligation on the part of the landlord to repair or keep in repair the leased premises. The tenant takes the premises as he finds them." *Morton v. Burton-Lingo Co.* (1941) 136 Tex. 263, 150 S.W.2d 239. Also see *Weiss v. Mitchell* (Dallas Tex.Civ. App.1933) 58 S.W.2d 165, writ dismissed; *Jackson v. Amador* (Eastland Tex.Civ.App. 1934) 75 S.W.2d 892, writ dismissed; 35 Tex.Jur.2d, "Landlord and Tenant," Section 82, page 572. In the light of the foregoing authorities, we hold that the lease in the case at bar did not impose by implication a duty on the part of the landlord to make repairs to the leased premises.

■ Now let us consider Appellant's argument that the City of Dallas Building Code imposed a duty on the Defendant landlord to maintain the premises in a fit condition. The language of the City Ordinance in question is not in the record. According to the record before us, Appellant sought to offer in evidence the files of the city housing inspector concerning the prem-

ises in question; however, the record shows no offer of proof by Appellant of the City Ordinance itself. As stated before, Appellant pleaded the ordinance by name and reference to title, but made no proof of the ordinance. Judicial notice is not taken of municipal ordinances, but they must be proven like other facts. *State ex rel. Osborn v. City of McAllen* (Tex.Comm.App. 1936) 127 Tex. 63, 91 S.W.2d 688, 692, opinion adopted; *City of Austin v. Walton* (1887) 68 Tex. 507, 5 S.W. 70. Without proof of the provisions of the city ordinance in question in the case at bar, we cannot say that it puts any duty of any kind upon the Defendant-Appellee landlord, including an implied duty to make repairs on the premises in question. Therefore we overrule Appellant's contention that the city ordinance in question imposed a duty on the landlord to maintain the premises in a fit condition for human habitation.

Appellant cites *Humber v. Morton* (Tex.1968) 426 S.W.2d 554 in support of his assertion that the doctrine of *caveat emptor* has been discarded by our Supreme Court in landlord-tenant relations. We do not agree. *Humber* was an action by a purchaser of a (new) house and lot from the vendor who was also the contractor who built the house. There it was held that the contractor-vendor impliedly warranted that such house was constructed in a good workmanlike manner and was suitable for human habitation. In making this decision our Supreme Court discarded the doctrine of *caveat emptor* insofar as it applied to the builder and seller of new houses. Appellant says the Court's reasoning in *Humber* should be applied by analogy to the landlord-tenant relationship, so as to impose an implied covenant by the landlord to make repairs to render premises suitable for human habitation. To adopt Appellant's argument would cause us to run counter to the many pronouncements of our Supreme Court as cited hereinabove which do not impose such an implied covenant on the landlord. Therefore we are of the opinion and hold that *Humber* does not have application to the case at bar.

Appellant has other points and contentions; however, under our view of the case as stated above, said points have been rendered moot. All of Appellant's points are accordingly overruled.

Judgment of the trial court is affirmed.

AFFIRMED.